**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IVORY YATES,** | : | |
| **Petitioner** | : | **No. 1:26-cv-02597** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **WARDEN FPC LEWISBURG,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Currently before the Court is pro se Petitioner Ivory Yates ("Yates")'s petition for a writ of habeas corpus under 28 U.S.C. § 2241 in which he appears to seek credit towards his federal sentence pursuant to the First Step Act ("FSA"). For the reasons stated below, the Court will dismiss Yates's petition and direct the Clerk of Court to close this case.

## I. BACKGROUND

On November 10, 2022, Yates was sentenced to one hundred and twenty-one months of federal incarceration to be followed by three years of supervised release after he pleaded guilty to (1) one count of conspiracy to distribute controlled substances and possess controlled substances with intent to distribute (21 U.S.C. § 846), (2) two counts of possession with intent to distribute 50 grams or more of methamphetamine (21 U.S.C. § 841(a)(1), (b)(1)(A)), (3) one count of distribution of 40 grams or more of fentanyl (21 U.S.C. § 841(a)(1), (b)(1)(B)), (4) three counts of possession with intent to distribute 400 grams or more of fentanyl (21 U.S.C. § 841(a)(1), (b)(1)(A)), (5) one count of conspiracy to launder monetary instruments (18 U.S.C. § 1956(h)), and (6) one count of possession with intent to distribute five grams or more of methamphetamine (18 U.S.C. § 841(a)(1), (b)(1)(B)), in the United States District Court for the Northern District of Ohio. See United States v. Yates, No. 21-cr-00674-01 (N.D. Ohio) ("Yates"), ECF Nos. 457 at 1–3; 745 at 17; see also (Doc. No. 1-1 at 2–3 (providing information

about Yates's convictions and sentence)).[1] Yates is currently confined at the Lewisburg Federal Prison Camp ("FPC Lewisburg"), and, according to the Federal Bureau of Prisons ("BOP")'s Inmate Locator (https://www.bop.gov/inmateloc/), he has an anticipated release date of July 23, 2030.

Yates commenced the instant action by filing his Section 2241 habeas petition, which the Clerk of Court docketed on September 9, 2026. (Doc. No. 1.) When he filed his petition, Yates did not pay the filing fee or seek leave to proceed in forma pauperis. As such, an Administrative Order issued requiring Yates to either pay the fee or file an application for leave to proceed in forma pauperis within thirty days or risk dismissal of this habeas action. (Doc. No. 2.) Yates timely complied with the Administrative Order by remitting the $5 fee on September 14, 2026. See (Unnumbered Docket Entry Following Doc. No. 3). Therefore, his habeas petition is ripe for review.

## II. LEGAL STANDARDS

### A. Screening of Habeas Petitions

District courts are obligated to screen habeas petitions pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. See R. 4, 28 U.S.C. foll. § 2254 ("The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the court must promptly examine it."); see also R. 4(b), 28 U.S.C. foll. § 2255

[1] The Court takes judicial notice of the docket and docket entries in Yates's underlying criminal case. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 537 n.1 (3rd Cir. 2014) (stating that the court "may take judicial notice of the contents of another [c]ourt's docket"); Wilson v. McVey, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). The docket shows that Yates's criminal proceedings were initiated by the grand jury returning an indictment on September 16, 2021, and it later returned a superseding indictment on October 28, 2021. See Yates, ECF Nos. 3, 85. The docket also shows that although Yates was sentenced on November 10, 2022, his written criminal judgment was not entered until November 14, 2022. See id., ECF No. 457 at 1.

("The judge who receives the motion must promptly examine it."). Rule 4 may be applied in habeas cases brought under Section 2241. See R. 1(b), 28 U.S.C. foll. § 2254 ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a))."). "[A] district court is authorized to dismiss a [habeas] petition summarily when it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Lonchar v. Thomas, 517 U.S. 314, 320 (1996); see also McFarland v. Scott, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face.").

**B. Section 2241 Habeas Petitions**

Section 2241 confers federal jurisdiction over a habeas petition that has been filed by a federal inmate challenging "not the validity but the execution of [their] sentence." See Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (citations and footnote omitted); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005) (stating that Section 2241 "allows a federal prisoner to challenge the 'execution' of his sentence in habeas"). While "the precise meaning of 'execution of the sentence' is hazy[,]" the phrase has been interpreted as to "put into effect" or "carry out." See Woodall, 432 F.3d at 242, 243 (citation omitted). As a result, a federal inmate may challenge conduct undertaken by the BOP that affects the duration of the inmate's custody. See, e.g., Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990) (finding that a federal inmate's Section 2241 petition is actionable where the inmate attacks the term of their custody by challenging the way the BOP is computing their federal sentence).

**C. The FSA**

In 2018, Congress passed the FSA to expand federal prisoners' access to noncustodial placements. See Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621,

3624, 3631–35). The FSA's provisions work together to motivate inmates to participate in specific programs and activities by allowing them to receive "earned time credits" for participating in "recidivism reduction programs." See 18 U.S.C. §§ 3621(h), 3624(g), 3632. It also requires the BOP to conduct initial assessments for all inmates, assign them to appropriate evidence-based recidivism reduction (EBRR) programs or productive activities (PAs), and expand the availability of such programs.

Under the FSA, the Attorney General was charged with development and release of a Risk and Needs Assessment System (the "System") within two-hundred-and-ten (210) days of December 21, 2018, the date on which the FSA was enacted. See 18 U.S.C. § 3632(a). The System is to be used for: (1) determining an inmate's recidivism risk; (2) assessing an inmate's risk of violent or serious misconduct; (3) determining the type and amount of evidence-based recidivism reduction programming ("EBRRs") appropriate for each inmate; (4) periodically assessing an inmate's recidivism risk; (5) reassigning an inmate to appropriate EBRRs and productive activities ("PAs"); (6) determining when to provide incentives and rewards for successful participation in EBRRs and PAs; and (7) determining when the inmate is ready to transfer to pre-release custody or supervised release. See (id.). Moreover, the System provides guidance on the "type, amount, and intensity of EBRR programs and PAs to be assigned to each inmate based on the inmate's specific criminogenic needs." See Kurti v. White, No. 19-cv-02109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020) (citing 18 U.S.C. § 3632(b)). In response to this directive, the BOP developed the "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN") system. See Brennerman v. Warden, FCI-Allenwood Low, No. 24-cv-02029, 2025 WL 52469, at *1 (M.D. Pa. Jan. 8, 2025) (citing DeFoggi v. United States, No. 20-cv-03889, 2020 WL 2899495, at *2 n.1 (D.N.J. June 3, 2020)). The PATTERN

system "determines the recidivism risk of each prisoner . . . and classif[ies] each prisoner as having minimum, low, medium, or high risk for recidivism." See 18 U.S.C. § 3621(a)(1).

The FSA allows eligible inmates who successfully complete EBRRs or PAs to receive FSA time credits to be applied toward time in pre-release custody or supervised release. See id. § 3632(d)(4)(A). An inmate may initially earn ten days of credit for every thirty days of successful participation. See id. Moreover, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two consecutive assessments may earn an additional five days of credit for every thirty days of successful participation. See id.

The BOP applies earned time credits to expedite an inmate's transfer either to prerelease custody, which includes residential reentry centers (RRCs) and home confinement, or to supervised release if such a term has been imposed as part of the inmate's sentence:

> If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of time credits under section 3632.

See id. § 3624(g)(3).

To be eligible for early placement, the prisoner must satisfy the following eligibility criteria. First, the prisoner must have earned time credits equal to the remainder of their imposed term of imprisonment. See id. § 3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. See id. § 3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." See id. § 3624(g)(1)(C). Fourth, for placement in prerelease custody or early placement in supervised release, the prisoner must have a minimum or low recidivism risk score in the last two (2) reassessments. See id. § 3624(g)(1)(D)(i)–(ii).

If an inmate cannot meet this recidivism-risk requirement, they can alternatively petition the Warden to be considered on an individualized basis for placement in prerelease custody or supervised release. See id. § 3624(g)(1)(D)(i)(II); Delgado v. Barraza, No. 23-cv-00881, 2023 WL 4553380, at *1 (M.D. Pa., July 14, 2023) ("Inmates with a high or medium PATTERN score can petition the warden to be considered on an individual basis for placement in prerelease custody or supervised release." (citations omitted)). The Warden can approve that petition upon determining that the prisoner (1) "would not be a danger to society if transferred to prerelease custody or supervised release," (2) "has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities," and (3) "is unlikely to recidivate." See id. § 3624(g)(1)(D)(i)(II)(aa)–(cc); 28 C.F.R. § 523.44(c)(2). "This exception to the minimum- or low-recidivism-risk precondition requires an inmate to directly petition the [w]arden, and therefore by statute (and regulation) demands administrative exhaustion." Fowler v. Wertzman, No. 23-cv-00290, 2023 WL 4853720, at *2 (M.D. Pa. July 28, 2023).

## III. DISCUSSION

Yates raises three claims in his Section 2241 petition. First, he asserts that the BOP, through the implementation of 28 C.F.R. § 523.42(a), has "invalid[ly]" interpreted 18 U.S.C. § 3585(a), which governs when a federal sentence commences. See (Doc. No. 1 at 9–11).[2] Second, he argues that the BOP's "interpretation of the [FSA], as expressed at [18 U.S.C.] §

---

[2] Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." See 18 U.S.C. § 3585(a). As for the BOP's regulation, Section 523.42(a), it states in relevant part that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences." See 28 C.F.R. § 523.42(a).

3632(d)(4)[(A)](ii), conflicts with [the] FSA's purpose [and] principle, thereby its meaning." See (id. at 11–19). Third, he contends that the "BOP's interpretations . . ., [f]unctioning simultaneously, produce[] an interpretation of [t]he Second Chance Act conflict [sic]." See (id. at 19–24). For relief, Yates seeks, inter alia: (1) a declaration that 28 C.F.R. § 523.42(a) is invalid, as applied to him; (2) the "recalculat[ion] of [his] FSA Time Credits consistent with" Section 3585(a); and (3) the application of "all FSA Time Credits." See (id. at 25).

Having reviewed Yates's Section 2241 petition, it plainly appears that he is not entitled to habeas relief in this case. Initially, the Court notes that, in submitting his petition, Yates uses a copy of a handwritten Section 2241 petition that other individuals incarcerated at FPC Lewisburg have recently used to assert challenges relating to the BOP's assessment of FSA time credits. See, e.g., Baez-Acevedo v. Warden FPC Lewisburg, No. 26-cv-02662 (M.D. Pa. filed Sept. 16, 2026), ECF No. 1; Sellers v. Warden FPC Lewisburg, No. 26-cv-02596 (M.D. Pa. filed Sept. 9, 2026), ECF No. 1; Mercado v. Warden FPC Lewisburg, No. 26-cv-02595 (M.D. Pa. filed Sept. 9, 2026), ECF No. 1; Smith v. Warden FPC Lewisburg, No. 26-cv-02594 (M.D. Pa. filed Sept. 9, 2026), ECF No. 1. In at least two cases involving the use of these handwritten form Section 2241 petitions, Judges in this District have dismissed the petitions for failing to state a claim for habeas relief. See Mercado v. Warden FPC Lewisburg, No. 26-cv-02595, 2026 WL 2832748 (M.D. Pa. Sept. 21, 2026) (Mannion, J.); Sellers v. Warden FPC Schuylkill, No. 26-cv-02596, 2026 WL 2815795 (M.D. Pa. Sept. 18, 2026) (Neary, J.).[3]

In both cases, the Judges explained their rationale for dismissing the petitions as follows:

> A petition for writ of habeas corpus must "state the facts supporting" the request for habeas corpus relief. Rule 2(c)(2), Rules Governing Section 2254 Cases,

[3] Although the caption for the latter case references Federal Prison Camp Schuylkill, see id. at *1, the habeas petition was directed to the Warden of FPC Lewisburg. See Sellers v. Warden FPC Lewisburg, No. 26-cv-02596 (M.D. Pa. filed Sept. 9, 2026), ECF No. 1 at 1.

> Following 28 U.S.C. § 2254. A petition is subject to dismissal if it offers only "bald assertions" and "conclusory allegations." Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) (quoting Campbell v. Burris, 515 F.3d 172, 184 (3d Cir. 2008)). The petition must present a prima facie claim for relief by making "sufficient 'factual allegations, which, if true, would entitle the applicant to federal habeas relief.'" Id. at 392 (quoting Schiro v. Landigan, 550 U.S. 465, 474 (2007). "[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 395 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).
>
> Here, the petition is completely devoid of any factual information on which the court could grant petitioner's request for habeas corpus relief. Although petitioner ostensibly seeks a writ of habeas corpus requiring the BOP to give him FSA credits, he has not included any factual information about his request for credits, such as the date he entered BOP custody, the time period for which he seeks FSA credit, the programs he has completed that would entitle him to FSA credit for that period, the nature of his conviction or convictions (which may be relevant to determining whether he is eligible for FSA credits under 18 U.S.C. § 3632), or any attempts he made to seek the FSA credits through the BOP's administrative remedy program. The petition contains 27 pages of general statements of the relevant statutes and case law but no facts to connect that law to the actual request for habeas corpus relief. Indeed, other than petitioner's name and the fact that he is currently housed in FPC-Lewisburg, the petition does not appear to contain any facts at all. Given this complete lack of facts, the court will dismiss the petition without prejudice to petitioner filing a new case.

See Mercado, 2026 WL 2832748, at *1; Sellers, 2026 WL 2815795, at *1.

Here, the Court agrees with the rationale for dismissing these form Section 2241 petitions insofar as Yates's Section 2241 petition is largely devoid of any specifics about the circumstances of his confinement, the time period for which he seeks FSA credit, or the programs he completed that would entitle him to FSA credit. This is unsurprising considering that multiple Section 2241 petitioners are using the same handwritten form, and the form does not appear to contain space for the petitioners to describe their individual circumstances. See (Doc. No. 1 at 1–25). The Court notes that Yates attaches to his petition printouts showing his "sentencing monitoring computation data as of July 15, 2025," see (Doc. No. 1-1 at 2–3 (cleaned up)), as well as his FSA Time Credit Assessment, see (id. at 4–5). However, Yates does not reference these attachments in his petition, explain the relevance of these documents, or describe

how they support his requests for habeas relief. Moreover, at best, the attached documents show that the BOP determined that Yates is ineligible for FSA time credits, see, e.g., (id. at 4 (indicating that Yates is ineligible for FSA credits)), which is only a part of the information he should have included within his petition. Overall, Yates's petition fails to provide sufficient facts supporting his request for the application of FSA time credits.

The Court could follow Mercado and Sellers and dismiss Yates's petition solely due to his failure to present facts related to his requests for habeas relief. However, Yates's petition plainly fails for a second reason, namely, his statutory ineligibility to earn FSA time credits due to the nature of his conviction, an issue he fails to mention in his petition.

Federal inmates convicted of specific crimes are ineligible for FSA time credits. See 18 U.S.C. § 3632(d)(4)(D) ("A prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under any of the following provisions of law . . . ."). Included among those crimes are any convictions under:

> Subparagraph (A)(vi) or (B)(vi) of section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) or paragraph (1)(F) or (2)(F) of section 1010(b) of the Controlled Substances Import and Export Act (21 U.S.C. 960(b)), relating to manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute, or dispense, a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, or any analogue thereof.

See id. § 3632(d)(4)(D)(lxvi).[4]

---

[4] Section 841(b)(1) provides that, inter alia: (1) a defendant is subject to a period of confinement "which may not be less than 10 years or more than life" if they possessed "400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or a fentanyl-related substance," 21 U.S.C. § 841(b)(1)(A)(vi); and (2) a defendant is subject to a period of confinement for "not less than five years and not more than 40 years" if they possessed "40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

Here, Yates pleaded guilty to, among other offenses, one count of distributing 40 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and three counts of possessing with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). See Yates, ECF No. 745 at 15 (indicating that Yates was "directly involved in or responsible for distributing [approximately] 142,000 grams of methamphetamine[,] 6,300 grams of a mixture and substance containing methamphetamine[, and] 5,300 grams of a mixture and substance containing fentanyl"). As such, Yates is statutorily ineligible to earn FSA credits, and none of his arguments in his petition, such as those pertaining to when his sentence commences for purposes of earning FSA time credits, directly address this ineligibility issue. Accordingly, whether the Court considers the lack of factual information in Yates's petition or his ineligibility to earn FSA time credits because of his criminal conviction, it plainly appears that the Court should dismiss his habeas petition.

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss Yates's Section 2241 habeas petition and direct the Clerk of Court to close this case. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

propanamide or a fentanyl-related substance," see id. § 841(b)(1)(B)(vi). In addition, Section 960(b) states that a defendant is subject to a five-year mandatory minimum sentence if they possessed "40 grams or more of a mixture or substance containing a detectable amount of [fentanyl] or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of [fentanyl] or a fentanyl-related substance." See 21 U.S.C. § 960(b)(1)(F).